IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JUSTIN PAUL MCKENZIE,

    Plaintiff,

v.                                                      Civil Action No. 1:17cv154
                                                          (Judge Keeley)

JOSEPH DELONG, Executive Director;
SHANNON MARKEL[1] [sic], CRJ
Administrator; JOHN DOE(S), Correctional
Officer(s); TRAVIS CROOK, C.O.; LT.
SHAVER; and JOHN DOE Team
Members,

    Defendants.

## REPORT AND RECOMMENDATION

### I. Introduction

The *pro se* Plaintiff, Justin Paul McKenzie ("McKenzie"), an inmate then-incarcerated at Huttonsville Correctional Center[2] ("HCC") in Huttonsville, West Virginia, filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 7, 2017. ECF No. 1. Along with his complaint, McKenzie filed a table of contents; a motion to proceed as a pauper with supporting documents; and a motion for leave to file excess pages. ECF Nos. 2, 3, 4, 5, 6. The Clerk of Court issued a Notice of Deficient Pleading, directing McKenzie to file a copy of his Prisoner Trust Account Report ("PTAR") within twenty-one days. ECF No. 8. On October 2, 2017, McKenzie filed his PTAR. ECF No. 10. By separate Orders entered on October 4, 2017,

---

[1] Per the dispositive motion filed on her behalf, the correct spelling of Defendant Markel's surname is "Markle" and she will be referenced accordingly within this Report and Recommendation. The Clerk will be directed to correct the docket.

[2] Plaintiff has since been transferred to Mt. Olive Correctional Complex ("MOCC"). See ECF No. 38. The undersigned notes that Plaintiff's filings in the instant action have all arrived in envelopes with return addresses identifying "Billy J. Mitchem" as the sender, both before and after his transfer from HCC to MOCC.

McKenzie was granted permission to proceed as a pauper on October 4, 2017 but directed to pay an initial partial filing fee ("IPFF"), and his motion to exceed the page limits was granted and denied in part, and the Clerk was directed to re-docket certain attachments to his complaint. ECF Nos. 10, 11. That same day, McKenzie filed a motion for leave to file *voire dire* questions; a motion for his complaint to be delivered by U.S. Marshals; a motion for appointment of counsel; a motion for leave to file his first request for production of documents. ECF Nos. 13, 14, 15, 16. By separate Orders also entered October 4, 2017, McKenzie's motion for his complaint to be delivered by U.S. Marshals was denied as moot; his motion for appointed counsel was denied; his motion to serve his first requests for production of documents was denied as premature and discovery was stayed; and his motion for leave to file proposed *voire dire* questions was denied as premature. ECF Nos. 17, 18, 19, 20. On November 3, 2017, McKenzie paid his IPFF. ECF No. 23.

On November 28, 2017, an initial review pursuant to LR PL P 2 was conducted, and the Defendants were ordered to answer the complaint. ECF No. 24. However, because the Plaintiff had named several "John Doe" defendants, Plaintiff was given an additional thirty days in which to identify them or risk their dismissal from this action. Id. On December 5, 2017, upon information from the United States Marshals that they were unable to serve Defendant "Joseph DeLong, Executive Director" or Defendant "C.O. Captain Crook," Plaintiff was directed to provide full names and/or updated address for those Defendants. ECF No. 27.

On December 11, 2017, Plaintiff filed a Motion for Leave to File an Amended Complaint [ECF No. 32] and on December 14, 2017, a Motion for Leave to File a Second Amended Complaint. ECF No. 33. By Order entered December 19, 2017, the first motion to amend was construed as a motion to identify the name of the John Doe Administrator for the Central

Regional Jail, and as a motion to conduct limited discovery to determine the identities of the remaining John Doe defendants named in his complaint; the Clerk of Court was directed to modify the docket entry for the motion accordingly; Plaintiff's Motion for Leave to File a Second Amended Complaint was construed as a response to the December 5, 2017 Order directing him to provide full names and/or updated addresses for the defendants and the Clerk was directed to modify the docket accordingly; Plaintiff's motion to conduct limited discovery to determine the true identities of the remaining John Doe Defendants was granted in part but deferred until the known CRJ defendants had been served; the Clerk was directed to correct the docket to reflect the true names of Defendants Shannon Markle and Travis Crook, to issue summonses for Defendants Markle, Crook, and DeLong, and to forward copies of the complaint to the United States Marshal Service to effect service of process upon them.[3]  ECF No. 34.

On December 28, 2017, Defendant Shaver filed a motion to dismiss with a memorandum in support. ECF Nos. 39, 40.  Because Plaintiff was proceeding *pro se*, a Roseboro Notice was issued on January 2, 2018. ECF No. 42. On January 16, 2018, Plaintiff filed a response titled "Objection" to Defendant Shaver's dispositive motion. ECF No. 47.  Along with his response, McKenzie also filed a Motion for Leave to Properly Respond to Defendant's Motion to Dismiss [ECF No. 48] and a Request for Documents. ECF No. 49. By Order entered January 19, 2018, Plaintiff's Motion for Leave to Properly Respond was construed as a motion for a copy of Defendant Shaver's dispositive motion and memorandum in support and granted; the Clerk was directed to send Plaintiff a copy of the same, along with a copy of the docket sheet; and the time for Plaintiff to respond was reset. ECF No. 50.

---

[3] Although the summons for Defendant Crook was returned executed [ECF No. 63], Crook filed no response and later filed a motion to quash Service of Process, arguing that service of process was improper because the summons and Complaint were served to an executive assistant, not personally to him. ECF No. 85.

On January 23, 2018, Defendants Delong and Markle filed a motion to dismiss with a memorandum in support. ECF Nos. 51, 52. On January 24, 2018, Plaintiff filed a motion for leave to properly file an objection to Defendant Shaver's motion to dismiss. ECF No. 54. Because Plaintiff was proceeding *pro se*, a second Roseboro Notice was issued on January 25, 2018, advising McKenzie of his right to respond to Defendant DeLong and Markle's dispositive motion.[4] ECF No. 55. That same day, McKenzie's motion for leave to properly file an objection to Defendant Shaver's motion to dismiss was construed as a motion for an extension of time to respond to the same and granted. ECF No. 56. On January 26, 2018, McKenzie filed a second "Objection" to Defendant Shaver's dispositive motion. ECF No. 57.

By Order entered February 12, 2018, limited discovery to identify the John Doe Defendants and the CRJ Defendants were directed to respond. ECF No. 64. On February 13, 2018, Defendants DeLong, Markle and Shaver objected. ECF No. 65. By Order entered February 15, 2018, Plaintiff was directed to produce a copy of a response previously received from AIG insurance within fourteen days. ECF No. 66. That same day, Defendants were directed to produce a copy of all grievances filed by McKenzie while in their custody. ECF No. 67. On February 20, 2018, McKenzie filed a motion for leave to amend his complaint. ECF No. 69. On February 22, 2018, the Defendants filed a Notice of Production to the Court and a Response and Objection to McKenzie's latest motion to amend. ECF Nos. 71, 72. By Order entered February 23, 2018, related to the undersigned's earlier Order granted limited discovery, the Defendants were directed to submit the information specified in that Order to the Court for *in camera* review. ECF No. 73. On February 27, 2018, Defendants DeLong, Markle, and Shaver filed their response to the Order directing them to provide documents for *in camera* review. ECF No. 76.

---

[4] Plaintiff never filed any response to the Defendants' Delong and Markle's dispositive motion. The second Roseboro Notice advising him of his right to respond to it was sent via certified mail, return receipt requested. The docket reflects that its delivery was accepted at MOCC on January 29, 2018. ECF No. 60.

By Order entered February 28, 2018, the Defendants were directed to clarify their response. ECF No. 77. That same day, Defendants filed a response, attaching an exhibit. ECF No. 78. On March 7, 2018, Plaintiff filed a motion requesting an extension of time in which to produce the AIG Insurance documentation. ECF No. 80. By Order entered March 12, 2018, the extension was granted.[5] ECF No. 81. By Order entered in error on March 14, 2018, the Defendants were again directed to file copies of Plaintiff's grievances. ECF No. 82. Later that same day, that Order was vacated. ECF No. 83. On March 16, 2018, Defendant Travis Crook filed a Motion to Quash Service of Process. ECF No. 85.

This case is before the undersigned for a report and recommendation on the pending motions, pursuant to LR PL 2.

## II. The Pleadings

### A. The Complaint

In the complaint, Plaintiff alleges that on or about September 12, 2014, while incarcerated at the CRJ, he was pushed, thrown down, restrained, sprayed with O.C. spray, and tasered by members of the CRJ's Special Response Team ("SRT"). ECF No. 1 at 7; ECF No. 1-5 at 3. Associated with that incident, Plaintiff now raises claims of excessive force, assault and battery; intentional, malicious, sadistic infliction of emotional distress; violations of § 1983; violations of the Fourth, Eighth, and Fourteenth Amendments; negligent supervision, training, and/or testing; negligence; willful, wanton, malicious, reckless conduct; conspiracy; intentional spoliation of grievances, video and reports; conditions of confinement; loss of personal property; deliberate indifference to serious medical needs; due process violations; and wrongful classification as a Level III, causing a denial of his rights and opportunities. ECF No. 1 at 7 – 8; ECF No. 1-5 at 3 -17. Plaintiff alleges he has suffered post-traumatic stress disorder ("PTSD");

---

[5] Plaintiff never produced the AIG documentation and never provided any explanation for his failure to do so.

lower back pain; hearing loss; contusions and lacerations; a dislocated shoulder; and mental anguish/emotional distress. ECF No. 1 at 9.

Plaintiff contends that he filed grievances over his claims at the CRJ, but that he could not attach them to his complaint because they were never returned to him. Id. at 5. He does not say if he completed the three-level exhaustion process. Id.

Plaintiff avers that in "approximately April 2016" he previously filed suit in Braxton County Circuit Court (hereinafter "Braxton County") over the same facts alleged in this action, stating "see the attached Notice of Complaint." Id. However, Plaintiff did not attach the same.[6] He avers that "[t]he Court never responded although AIG Insurance did respond to the Notice of prisoners [sic] *pro se* complaint." Id. at 6. In response to the form complaint's question as to whether he exhausted his administrative remedies with this lawsuit, he stated that he was "in segregation and never received any returned response." Id.

Plaintiff seeks injunctive relief in the form of an evaluation for PTSD; expungement of his disciplinary convictions; and the remainder of his sentence vacated. ECF No. 1 at 9; ECF No. 1-5 at 1 – 2. Further, he seeks compensatory and punitive damages. ECF No. 1; ECF No. 1-5 at 18 – 19.

B. **Defendant Lt. Shaver's Motion to Dismiss**

In his dispositive motion, Lt. Shaver ("Shaver") argues that the case should be dismissed because:

1) Plaintiff's claims are time-barred [ECF No. 40 at 4];

---

[6] However, attached to an earlier case Plaintiff filed on August 21, 2017, that was dismissed on September 11, 2017, for failure to comply with the Local Rules of Prisoner Litigation Procedure ("LR PL P"), Plaintiff did attach a draft copy of a Notice of Prisoner Pro-Se Complaint and Complaint, dated and notarized on April 19, 2016, alleging some of the same grounds alleged in the instant complaint. See McKenzie v. DeLong, Case No. 1:17cv146, ECF No. 1-3. However, neither had any time-stamp, to prove that they had been filed in any court.

2) Plaintiff's complaint fails to allege sufficient facts to support a claim against Shaver, and Shaver was not a member of the SRT involved in the September 2014 incident [id. at 6];

3) Plaintiff has failed to state a claim under § 1983 [id. at 9];

4) Defendant Shaver is entitled to qualified immunity for performing discretionary acts associated with his employment [id. at 10 – 11];

5) Plaintiff cannot assert any claims against Shaver under Article III, §5 of the West Virginia Constitution [id. at 17];

6) Plaintiff's claim for punitive damages must be dismissed as a matter of law because such damages are not permitted against agents of West Virginia State Agencies under W.Va. Code § 55-17-4(3). Id. at 18.

**C. Plaintiff's First Response in Opposition to Lt. Shaver's Motion to Dismiss**

Plaintiff avers that he never received a copy of Shaver's motion and only learned it had been filed when he received the Roseboro Notice. ECF No. 47 at 7. His twenty-three page "objection" goes on to generally reiterate the claims made in his complaint. Id. at 9 – 23.

**D. Defendants DeLong and Markle's Motion to Dismiss**

Defendants DeLong and Markle argue that the case should be dismissed because:

1) Plaintiff's claims are time-barred [ECF No. 52 at 4];

2) Plaintiff's complaint fails to allege sufficient facts to support a claim against DeLong and Markle for any wrongdoing [id. at 6];

3) Plaintiff has failed to state a claim under § 1983 [id. at 9];

4) Defendants Markle and Delong are entitled to qualified immunity for performing discretionary acts associated with their employment [id. at 10 – 11];

5) Plaintiff cannot assert any claims against DeLong and Markle under Article III, §5 of the West Virginia Constitution [id. at 17];

6) Plaintiff's claim for punitive damages must be dismissed as a matter of law because such damages are not permitted against agents of West Virginia State Agencies under W.Va. Code § 55-17-4(3). Id. at 18.

**E. Plaintiff's Second Objection to Defendant Shaver's Motion to Dismiss**

Regarding Shaver's contention that his claims are time-barred, Plaintiff contends that in 2015, he filed a Notice of State Civil Rights Complaint and a Complaint pursuant to 42 U.S.C. § 1983 in Braxton County within the applicable statute of limitations. ECF No. 57 at 4, 9. He avers that he wrote to Braxton County to request a copy of the same, and also wrote to Pruntytown Correctional Center to obtain copies of vouchers showing proof of the date postage was paid for and a copy of the mail log, to prove the complaint was filed while he was incarcerated there. Id. at 4. He states that after he filed suit in Braxton County, he was transferred to Salem Correctional Center, and never received any response from Braxton County, so he wrote to the Braxton County for a status update, but never received any response. Id.

Plaintiff argues that the "continuing violations doctrine" should toll the statute of limitation on his claims, because the "policies and beliefs" at CRJ are such that abusive behavior toward inmates is routine and "is passed down through the supervision, training and testing of their officers and employees[]" and this conduct persisted throughout his incarceration at CRJ. Id. at 6. Further, he argues he should be entitled to equitable tolling to extend the statute of limitations for filing his case because he delayed filing while he was at the CRJ, out of fear of further retaliation. Id. at 8. He also contends that at that time, he believed that he had to first file in state court, and then in federal court. Id. at 9. Further, he argues that the Defendants should be estopped from asserting a statute of limitations defense, given that he never received responses to any his grievances or medical requests, because the Defendants "prevented" all avenues to seek help. Id. Further, he contends that the Defendants threw away all of his legal mail, personal property, and personal mail, to interfere with his access to the court. Id.

Plaintiff reiterates his claims and attempts to refute Defendant Shaver's arguments on the same, arguing that Shaver was in fact an active participant in the "raid/extraction at the Central

Regional Jail and was one of the Officers that physically pounced on" him and repeatedly picked him up and dropped him on his face. Id. at 10. He contends that it was C.O. Crook and Shaver who approached and "tazed" him, and Shaver slammed him against the wall. Id. 10 – 11.

### III. Standard of Review

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1356 (1990). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts have long cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitled him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not asserts "detailed factual allegation," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to

raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable," Id. Therefore, in order for a complaint to survive a dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim had facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## IV. Analysis

**Statute of Limitations**

For purposes of determining the appropriate statute of limitations, claims filed pursuant to 42 U.S.C. § 1983 are analogous to "general personal injury actions." Wilson v. Garcia, 471 U.S. 261, 279 (1985). Thus, their timeliness is determined based upon the relevant state limitations period for personal injury actions. See Owens v. Okure, 488 U.S. 235, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989).

W.Va. Code § 55-2-12(b) provides:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) within two years next after the right to bring the same shall have accrued if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be

>  for any other matter of such nature that, in case a party dies, it could not have been brought at common law by or against his personal representative.

Here, it is undisputed that the incident in which Plaintiff alleges he was wrongfully assaulted occurred on September 12, 2014. Defendants Shaver, DeLong, and Markle argue that because Plaintiff's cause of action accrued on September 12, 2014, under the applicable 2-year statute of limitation, Plaintiff's complaint is time-barred because he did not file suit until September 7, 2017. Here, however, for purposes of calculating the applicable statute of limitations, because Plaintiff originally filed suit over these claims in this Court on August 21, 2017 (in Case No. 1:17cv146), because his complaint was not on a court-approved form, a Notice of Deficient Pleading and Intent to Dismiss was issued. Plaintiff refiled his claims on the correct forms on September 7, 2017 and the original case was dismissed on September 11, 2017 in favor of this one. Thus, the date Plaintiff filed the instant suit will be construed as August 21, 2017, not September 7, 2017. Nonetheless, Plaintiff's claims remain time-barred.

In response to Defendants Shaver, DeLong, and Markle's arguments regarding the applicable 2-year statute of limitation, Plaintiff argues that he filed suit in Braxton County in 2015[7] and would provide proof of the same, in the form of a copy of the Complaint filed there [ECF No. 57 at 4, 9]; copies of Pruntytown Correctional Center mail logs and vouchers proving the date postage was purchased to mail the Braxton County complaint [ECF No. 57 at 4]; and the response he received from AIG Insurance after he filed his Braxton County complaint. ECF No. 1 at 5 – 6; see also ECF No. 80 at 1. However, to date, Plaintiff has not produced copies of any of these documents. Conversely, the Defendants have produced a copy of a February 22, 2018 notarized Affidavit from the Braxton County Circuit Clerk, averring that Plaintiff has never filed any action there at any time. ECF No. 78 at 1.

---

[7] In his complaint, Plaintiff stated that his Braxton County complaint was filed in April, 2016. ECF No. 1 at 6.

11

Because the Defendants have not raised the affirmative defense of failure to exhaust administrative remedies, the undersigned presumes Plaintiff fully exhausted his claims before filing suit. While a Bivens plaintiff pursues his administrative remedies, as he is obligated to do by the PLRA, the otherwise applicable statute of limitations is tolled. Young v. Thompson, No. 2:10cv66, 2011 WL 3297494, Bailey, J. (N.D. W.Va. July 29, 2011)(citing Johnson v. Lappin, 2011 WL: 560459 (S.D. W.Va. Jan. 6, 2011)); see Lopez v. S.C.D.C., No. 3:06251-PMD-JRM, 2007 WL 2021875 *2 (D.S.C. 2007) ("The Fourth Circuit has not addressed the issue of whether the statute of limitations for a § 1983 action should be equitably tolled while a prisoner is exhausting the administrative process. However the 'uniform holdings of the circuits that have considered the question' typically tolls the statute of limitations.") citing Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005)); see also Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000); Gonzalez v. Hasty, 651 F.3d 318, 323 – 24 (2nd Cir. 2011); Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999) (per curiam); Blackburn v. South Carolina, 2009 U.S. Dist. LEXIS 18398, *22-23, 2009 WL 632542 (D.S.C. Mar. 10, 2009) (while a § 1983 inmate is waiting for a resolution on his grievance, the statute of limitations is tolled; the relevant date is the date upon which the administrative remedy is finally exhausted). Therefore, to fully exhaust his claims administratively, Plaintiff should have completed the grievance process within at most, sixty days from the date he filed his grievances.[8] Accordingly,

---

[8] This Court has previously summarized the WVRJCFA's grievance process as follows:

> Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's

in order to comply with the applicable two-year statute of limitations, after adding the minimum sixty days to complete administrative exhaustion, the statute of limitations to timely file suit would have begun to run on November 12, 2014, and Plaintiff should have filed suit within two years of that date, or by November 12, 2016. Plaintiff did not file suit until August 21, 2017, nine months and nine days after the two year statute of limitations expired. Although the Plaintiff vaguely alludes to having waited to file his case until he was free of the custody of the WVRJ system for fear of retaliation [ECF No. 57 at 8], Plaintiff fails to provide any detail or factual information to support such a claim. His claim of having filed suit in 2015 or 2016 in Braxton County Circuit Court has been proven to lack merit. While he claims that he was under the misunderstanding that he had to first file suit in state court, and then in federal, "ignorance of the law is no excuse." Screws v. United States, 325 U.S. 91, 129 (1945). Accordingly, the Plaintiff's claims against the defendants are time-barred.

The undersigned finds that Plaintiff's claim that he "attempted to file" several grievances and medical requests and "never received any response" [ECF No. 57 at 9] in support his claim that the Defendants should be estopped from asserting a statute of limitations defense because

---

response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

Chase v. Trent, No. 1:11cv108, 2012 WL 5845361, at *4 (N.D. W.Va. Oct. 16, 2012) (Kaull, M.J.), report and recommendation adopted, No. 1:11cv108, 2012 WL 5845219 (N.D. W.Va. Nov. 19, 2012) (Keeley, J).

they interfered with his access to the court by prevented him from administratively exhausting his claims lacks merit. On February 22, 2018, pursuant to this Court's Order, the Defendants produced copies of all grievances filed by Plaintiff while in the custody and control of the West Virginia Regional Jail & Correctional Facility Authority ("WVRJ"). Produced were copies of 235 requests, grievances, and inmate medical request forms that Plaintiff filed between October 3, 2013 through December 7, 2015. See ECF No. 71. All of the grievances and requests produced appear to have been timely responded to, occasionally the same day they were filed, but usually within one day, and occasionally within three or four. See id. Among them are seven grievances filed on September 12, 2014; one filed on September 14, 2014; and one filed on February 8, 2015, which appear to possibly be related to the claims at issue in Plaintiff's complaint.

A review of the grievances filed on September 12, 2014 reveals that one was filed regarding excessive force during a shake down; in it, Plaintiff sought a copy of the tape recording of the incident where he was tased [ECF No. 71 at 26]; its September 15, 2014 response, signed by S. Markle, is marked "disapproved." Id. The next grievance complained that inmates' mail was not being delivered the same day it arrived at the facility and there was no outgoing mail on Saturdays [id. at 29]; the September 15, 2014 response by S.A. Markle noted that "[t]mail does not run here on Sat." Id. In the next grievance, Plaintiff complained that he was not permitted to witness the search of his property as per policy [id. at 28]; its September 15, 2014 response, signed by S.A. Markle, noted "you do not have to be present during a search." Id. The next grievance reports that Plaintiff's personal property and photos were taken without cause [id. at 24]; the September 15, 2014 response from S.A. Markle noted "I will look into." Id. The next grievance involves Plaintiff's complaint that his court-ordered phone calls to his son were

14

interfered with, presumably because of some disturbance at the facility [id. at 27]; its September 15, 2014 response by S.A. Markle noted "I spoke to you on Friday about this." Id. The next grievance complained that after Plaintiff's legal work had been searched, some of it appeared to be missing [id. at 25]; the September 15, 2014 response by S.A. Markle stated "I will look into." Id. Plaintiff's final September 12, 2014 grievance reported that he "requested that the shift supervisor come and collect grievances before the end of the day shift and no one ever came as policy said they would" [id. at 23]; its September 13, 2014 response by "Cpl. McCune" [sic – illegible] noted that "[g]rievance's [sic] were pickup [sic] from B2 this date." Id. Finally, the September 14, 2014 grievance complained that "[m]y grievances were finally accepted this morning, then shortly after I was brought legal mail that had been held for 3 days, when I had the officer date + sign I was thrown in seg. in retaliation" [id. at 22]; its September 15, 2014 response, signed by S.A. Markle, did not show any action taken. Id. Defendants also produced a copy of a February 8, 2015 Lockdown Officer Client inquiry, created by McKenzie, who requested a copy of a video tape "for the incident of the alledged [sic] assault for my hearing on wednesday [sic] [id. at 176];" it is unclear if this grievance/inquiry, possibly filed on the WVRJ's "Kiosk" system, is even related to the claims at issue in this complaint.

Nonetheless, a careful review of these particular grievances, or the grievances *in toto*, does not support Plaintiff's claim that Defendants should be estopped from asserting a statute of limitations defense because they habitually interfered with his filing grievances and thus, his access to the court. To the contrary, it is apparent that in each instance Plaintiff filed a grievance (235 grievances/requests, filed in a span of approximately 2 years and 2 months), he received timely, on-point responses. The undersigned also notes that despite Plaintiff's claim of "serious injury," he filed no request for medical care contemporaneously-related to the September 12,

2014 incident, and did not even mention being injured in the grievance alleging excessive force, nor did he ever file any grievances regarding negligent supervision, training, and/or testing; negligence; willful, wanton, malicious, reckless conduct; conspiracy; intentional spoliation of grievances, video and reports; conditions of confinement; due process violations; and wrongful classification as a Level III, causing a denial of his rights and opportunities; his alleged PTSD; lower back pain; hearing loss; contusions; lacerations; dislocated shoulder; and/or his mental anguish/emotional distress. Finally, in response to the Court's February 23, 2018 Order, directing them to produce documents for *in camera* review related to the grant of limited discovery to identify the John Doe defendants, *inter alia*, Defendants produced a copy of a September 12, 2014 WVRJ Incident Report, signed by Defendant Captain Travis Crook on 4:03 p.m. that day, describing the incident of alleged excessive force:

> . . . at approx. 1445 myself unit # 3 along with unit # 4 Lt. Strider Orimet approached A-pod section 2 – Cell 2 to secure I/M Justin McKenzie . . . SRT was conducting a shake down of CRJ due to a I/M trying to take a[n] officer hostage and stabbing C/O Blake with a "shank" this I/M was trying to escape. Do to these actions SRT was removing all contraband and weapons from CRJ. I/M Justin McKenzie had a past disciplinary history of assault on Officers. SRT felt obligated to remove I/M McKenzie from his cell before shaking down A-pod section 2. Myself and Unit 4 approached cell 2 and gave I/M McKenzie three loud verbal commands to get down on the ground hands behind his head legs crossed. I/M McKenzie refused my direct orders and took an aggressive stance by clinching his fists and yelling at me. At this time I deployed one taser cartridge from my X2 Taser to I/M McKenzie's upper right thigh. I/M McKenzie was restrained by Unit 2 with mechanical restraints. I/M McKenzie was then checked and cleared by prime care medical staff nurse Amy Hawkins E.O.R.

ECF No. 76-1 at 8 (all spelling and punctuation errors in original). It appears, then, that Plaintiff was tasered because of his past history of assaulting officers and his aggressive refusal to comply with officer requests that day, not as a result of any intentional, malicious, or sadistic infliction of excessive force, or deliberate assault and battery, as alleged. Further, despite Plaintiff's claims of deliberate indifference to serious medical needs, it is apparent that he was medically assessed

immediately after the incident, never sought further treatment, and never filed any grievance regarding that issue, either. Accordingly, even if Plaintiff's claims were not already time-barred, they are so lacking in merit that they would be dismissed anyway, for their failure to state a claim upon which relief can be granted.

### V. Recommendation

In consideration of the foregoing, the undersigned hereby recommends that Defendant Shaver's Motion to Dismiss [ECF No. 39] be **GRANTED;** Defendants DeLong and Markle's Motion to Dismiss [ECF No. 51] be **GRANTED**; Defendant Travis Crook's Motion to Quash Service of Process [ECF No. 85] be **DENIED as moot**; and that the Plaintiff's complaint [ECF No. 1] be **DISMISSED with prejudice as time-barred**.

Further, the undersigned recommends that Plaintiff's pending Motion for Leave to Amend Complaint [ECF No. 69] be **DENIED as moot.**

The Clerk of Court is **DIRECTED** to correct the spelling of Defendant Markle's surname on the docket from "Markel" to its correct spelling, "Markle."

**Within fourteen (14) days after being served with a copy of the Report and Recommendation**, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, at his last known address as reflected on the docket, and to transmit a copy electronically to all counsel of record.

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

DATED: May 17, 2018

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE